BURNS *v.* FIRST NAT'L BANK.

5-1700                                                    319 S. W. 2d 827

Opinion delivered January 19, 1959.

*J. Sam Wood,* for appellant.

*Bryan & Fitzhugh,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation involves the will of John O'Kane, who died in 1927 survived by his wife, Mrs. Clara O'Kane. Mr. and Mrs. O'Kane, both residents of Sebastian County, had no children or descendants. The appellants are some of the legal heirs of Mr. John O'Kane; and the appellee is the executor of the estate of Mrs. Clara O'Kane, who

died in 1957. The appellee filed this action against all the legal heirs of John O'Kane, seeking a construction of his said will; and from an adverse judgment the appellants prosecute this appeal. The portions of Mr. O'Kane's will germane to this litigation, are:

"THIRD: I give, devise, and bequeath unto my beloved wife, Clara O'Kane, absolutely, after payment of all of my funeral expenses and just debts and the legacies provided in section two of this will, the one-half part of all of the residue of my estate, real, personal, and mixed, of which I may die seized and possessed, to have and to hold the same unto her and unto her heirs and assigns forever.

"FOURTH: I give, devise and bequeath unto my beloved wife, Clara O'Kane, for and during her natural life, after the payment of my funeral expenses and just debts and the legacies provided for by article two of this will, the one-half part of all of my estate and property, real, personal and mixed of which I may die seized and possessed, to have and to hold the same unto her and to her assigns during her natural life, for her proper use, benefit, support and maintenance, and after her decease said property so devised and bequeathed or the remainder and residue thereof is to be divided among my legal heirs as provided by the laws of this State for the distribution of estates by descent. It being my express will and purpose by the above articles three and four, that after the payment of my debts and funeral expenses and the legacies hereinbefore set forth, that my wife should be invested with the whole of my said estate, one-half of which she shall hold for and during her natural life, and one-half she will hold absolutely in her own right in fee simple, in *lieu* of dower in my said estate.

"FIFTH: I do hereby authorize and empower my said wife, Clara O'Kane for the estate hereinbefore devised and bequeathed to her during her natural life by said article four of this will, to sell and dispose of the same for such prices and upon such terms as she may deem proper and for the best interests of my said estate,

and to make, execute and deliver such deeds and other papers as may become necessary to carry the same into effect, and it will only be necessary for her to refer to this will as her authority for so doing.

"SIXTH: I hereby appoint and constitute my wife, Clara O'Kane, as executrix of this my last will and testament and request that she shall be permitted to qualify and act as such executrix without giving bond. I further desire and request that no probate reports or other annual reports be required from my said wife and executrix.

"SEVENTH: I further will and direct that my said wife shall not be held pecuniarily liable for any loss to or diminution in the said property and funds."

The net estate of Mr. O'Kane, after satisfying all debts and specific legacies, was $36,804.57, consisting of both realty and personalty. When his estate was completely administered in Sebastian County in 1928, Mrs. O'Kane took charge of all of the said net of the estate. She did not keep her *fee portion* separate from her *life portion*; but when she died in 1957 she had remaining a total of $19,866.46, after paying all of her debts and specific legacies. There is no showing that Mrs. O'Kane had any separate estate except what she received from Mr. O'Kane.

In its action for construction of the will of Mr. O'Kane, the appellee insisted that the said net of Mrs. O'Kane's estate (that is, $19,866.46) should be divided, one-half to Mrs. O'Kane's heirs and one-half to Mr. O'Kane's heirs. This would mean that Mr. O'Kane's heirs would now receive slightly less than $10,000.00. The appellants insist that under Mr. O'Kane's will, his heirs at law are now entitled to receive one-half of the net amount of his estate when it was closed, — *i.e.*, $18,402.28, which was the amount of the life estate which Mrs. O'Kane received under the provisions of Mr. O'Kane's will, since more than that amount remained after Mrs. O'Kane's estate had been completely administered. The Probate Court agreed with the contentions of the appellee, and this appeal ensued.

It is crystal clear that Mr. O'Kane provided that his estate should go one-half to his wife *in fee* and the other one-half to his wife *for life only,* with the remainder to his legal heirs. The portions of the will heretofore copied definitely so provide. Whether Mrs. O'Kane could have invaded the corpus of the life estate for her necessary self-support is a matter that need not be discussed, because, after paying all of her debts, she left more than the net value of the life estate. What she did with her fee interest is not before us. In short, Mrs. O'Kane received from Mr. O'Kane's estate a net of $18,402.28 for life, with power of disposal; and our cases recognize the legality and enforceability of life estates with power of disposition, whether the estate be realty or personalty or mixed. *Galloway* v. *Sewell,* 162 Ark. 627, 258 S. W. 655; *United States of America* v. *Moore* (and cases therein cited), 197 Ark. 664, 124 S. W. 2d 807; and *Weeks* v. *Weeks,* 211 Ark. 132, 199 S. W. 2d 955.

The Probate Court's judgment in effect treated Mr. O'Kane's will as though he had left his entire estate to Mrs. O'Kane with power of disposition for her support, because the Probate Court *divided the net remainder* which she had at the time of her death into two equal parts. Such a result defeats Mr. O'Kane's expressed directions concerning the life estate. He did not give Mrs. O'Kane the entire estate to be divided into two equal parts at her death: he gave her one-half of the estate in fee, and one-half for life, with the remainder to his legal heirs. The fact that Mrs. O'Kane did not segregate the life estate from the fee estate is of no consequence, since there remained, after closing her estate, more than the value of the life estate. (See *Chambers* v. *Williams,* 199 Ark. 40, 132 S. W. 2d 654.) So we conclude that the appealing heirs of Mr. O'Kane are entitled to their share of the value of the life estate received by Mrs. O'Kane — that is, $18,402.28.

The foregoing holding makes it unnecessary to discuss the other matters urged in the briefs. The judgment of the Probate Court is reversed, and the cause

remanded for proceedings not inconsistent with this opinion.

JOHNSON, J., not participating.